UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:24-CV-60382

(Jury Trial Demanded)

| | |
|---|---|
| JESSICA PIAFSKY, an individual, | |
| Plaintiff, | |
| v. | |
| MB HOME IMPROVEMENTS INC. a Florida corporation, MAXIM BOHADANA, an individual, ROI NEEMAN, an individual and CONSTRUCTION FORT LAUDERDALE INC. d/b/a MB HOME IMPROVEMENTS, a Florida corporation, | |
| Defendants | |

## FIRST AMENDED COMPLAINT

Plaintiff, JESSICA PIAFSKY, by and through undersigned counsel, sues Defendants MB HOME IMPROVEMENTS INC., MAXIM BOHADANA, ROI NEEMAN ("NEEMAN", and CONSTRUCTION FORT LAUDERDALE INC. doing business as MB Home Improvements ("CFL", together with MB, BOHDANA and NEEMAN collectively referred to as the "Defendants"), and alleges as follows:

## INTRODUCTION

1.      This is an action for damages arising from the Defendants' breach of contract and for their wrongful, negligent, and fraudulent acts in performing renovations to the Plaintiff's property at 3272 SW 51st Street, Hollywood, Florida (the "**Property**") with damages estimated to be in excess of $200,000.00 exclusive of interest, costs, statutory damages and attorneys' fees.

## PARTIES

**Plaintiff Jessica Piafsky:**

2.      Plaintiff, JESSICA PIAFSKY ("Plaintiff" or "PIAFSKY"), is an individual who is a resident of the State of New York, County of Nassau, who, owns property in Broward County, Florida, and is *sui juris*.

**Defendant MB Home Improvements Inc.:**

3.      Defendant MB HOME IMPROVEMENTS INC. ("MB") is a Florida Corporation with its principal place of business in Broward County, Florida.

4.      MB is licensed by the State of Florida as a Certified Roofing Contractor, Certified Building Contractor and a Construction Business Information.

5.      At all times relevant hereto, MB regularly conducted business within Broward County, Florida.

**Defendant Maxim Bohadana:**

6.      Defendant MAXIM BOHADANA ("BOHADANA"), is an individual who, upon information and belief, is a resident of Broward County, in the State of Florida and is *sui juris*.

7.      BOHADANA is licensed by the State of Florida as, *inter alia¸* a Certified Roofing Contractor and a Certified Building Contractor.

8.      BOHADANA does business under the alias "MB Home Improvements."

9.      At all times relevant hereto, BOHADANA regularly conducted business within Broward County, Florida.

10.      At all times relevant hereto, BOHADANA was and remains the President of MB.

11.      Upon information and belief, at all times relevant hereto, BOHADANA was and remains the sole shareholder of MB and that MB is alter ego for BOHADANA.

**Defendant Construction Fort Lauderdale, Inc.:**

12.     Defendant CONSTRUCTION FORT LAUDERDALE INC. ("CFL"), is a Florida Corporation with its principal place of business in Broward County, Florida.

13.     At all times relevant hereto, CFL was not licensed as a roofing contractor or a building contractor or a Construction Business Information.

14.     At all times relevant hereto, CFL was conducting business in Broward County, Florida.

15.     At all times relevant hereto, CFL does business under the name "MB Home Improvements."

16.     At all times relevant hereto, CFL was acting as an authorized agent for MB.

**Defendant Roi Neeman:**

17.     Defendant ROI NEEMAN ("NEEMAN"), is an individual who is a resident of Broward County, Florida, and is *sui juris.*

18.     At all times relevant hereto, NEEMAN was not licensed as a roofing contractor, a building contractor or a construction business information.

19.     At all times relevant hereto, NEEMAN was and remains the President of CFL.  In the alternative, NEEMAN does business under the name "CONSTRUCTION FORT LAUDERDALE".

20.     Upon information and belief, at all times relevant hereto, NEEMAN was and remains the sole shareholder of CFL and that CFL is the alter ego for NEEMAN.

21.     At all times relevant hereto, NEEMAN was acting as an authorized agent for MB.

## JURISDICTION AND VENUE

22.     This is an action for damages in excess of seventy five thousand dollars ($75,000.00), excluding interest, costs and attorneys' fees.

23.     The Plaintiff is a citizen of the State of New York, and all the defendants are citizens of the State of Florida.

24.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(a)(1) as there is diversity of citizenship between the Plaintiff and defendants.

25.     Jurisdiction is proper in this Court pursuant to 28 U.S.C.  §1391(b)(1) and (2) as the defendants reside in the State of Florida, County of Broward, and a substantial part of the events or omissions giving rise to the claims occurred in Broward County, Florida, and the property that is the subject of the action is situated in Broward County, Florida.

## FACTS RELEVANT TO ALL COUNTS

## THE "ARRANGEMENT"

26.     Upon information and belief, BOHADANA, in his individual capacity and as president of MB, allowed and continues to allow, multiple third parties to use the MB name to solicit customers, enter into construction contracts with customers and provide construction services in Florida.

27.     Upon information and belief, BOHADANA and MB knowingly and willingly (i) allowed NEEMAN to operate under MB's name; (ii) to trade on MB's goodwill and (iii) to act as MB's agent and representative.

28.     In exchange for the use of MB's name and goodwill, NEEMAN and CFL would pay MB a portion of the proceeds collected by NEEMAN and/or NEEMAN's Company, CLF.

29.     Upon information and belief, BOHADANA does not oversee each project that is contracted for by the other entities operating under MB's name.

**THE PROJECT**

30.     On or about July 20, 2023, PIAFSKY entered into a contract (the "Contract of Sale") to purchase the Property.

31.     Upon entering into the Contract of Sale, PIAFSKY began to search for licensed contractors who could perform major renovations to the interior and exterior of the Property.

32.     Between on or about July 25, 2023 through July 30, 2023 met with NEEMAN to interview him as a potential contractor for the Property.

33.     NEEMAN represented that he was a licensed contractor, MB was "his" company, and that he had authority to enter into contract on behalf of MB.  Indeed, at least one time, NEEMAN informed PIAFSKY that she could make one of the payments to NEEMAN's personal bank account.

34.     Between July 25, 2023 and July 30, 2023, NEEMAN, acting as MB's agent, tendered a bid and certain revised bids to PIAFSKY for renovations to the Property.

35.     Upon information and belief, BOHADANA did not review the bids prior to its communication to PIAFSKY, but rather had entrusted NEEMAN's judgment and allowed him to make bids for construction projects.

36.     On or about August 2, 2023, PIAFSKY accepted a revised bid, which became the contract between MB and PIAFSKY.  A copy of the contract that NEEMAN has confirmed was the operative contract is annexed hereto as **Exhibit A**

37.     The bid and contract identified the Contractor as "MB HOME IMPROVEMENTS, INC. and has license numbers CBC1265305 and CCC1334811".  The bid/contract also states that

5

"All warranty, service calls and claims related to the project will be thru Construction Fort Lauderdale DBA MB Home Improvements."

38.     MB, via NEEMAN and CFL, has acknowledged and affirmed the existence of the contract and the Project.

39.     With the exception of the two payments, payments were made to CFL bank account, with the understanding that such payments were being made and/or forwarded to MB. Two of the payments were made directly to NEEMAN's personal account with the understanding that such payments were being forwarded to MB.

40.     At the time MB and PIAFSKY entered into the contract, and as part of the contract, PIAFSKY expressed, and MB accepted, that it was a material condition of the contract that the interior renovations be completed by February 19, 2024 and that the exterior renovations be completed by no later than April 20, 2024.

41.     Subsequently, NEEMAN represented that the interior renovations would be completed by January 1, 2024, and then changed the date to January 7, 2024.

42.     On or about October 10, 2023, PIAFSKY completed her purchase of the Property.

43.     On or about October 11, 2023, MB began construction and demolition work at and on the Property.

44.     Upon information and belief, BOHADANA did not visit the Property at any time, and instead trusted NEEMAN to perform the demolition and construction work in an appropriate and workmanlike manner.

45.     All the actual work performed at the Property was performed by and/or under NEEMAN's supervision, both individually and/or through his company, CFL.

46.     Neither NEEMAN nor CFL had a licensed building contractor at the Property to oversee the work that MB, NEEMAN and CFL were performing at the Property.

47.     From October 11, 2023 through and until January 1, 2024, MB, working through NEEMAN and CFL, performed intermittent work on the Property.

48.     At various intervals, PIAFSKY would check on the state of the renovations.  On each occasion, PIAFSKY expressed her dissatisfaction to NEEMAN that the renovations were not proceeding according to schedule.

49.     On more than one occasion, NEEMAN informed PIAFSKY that certain work had been completed.  PIAFSKY would then travel from New York to Florida to inspect the completed work, only to discover that the work was not done.

50.     Notwithstanding MB's failure to work on the Property, MB, acting through NEEMAN, would demand additional payments from PIAFSKY.  NEEMAN, acting as MB's agent would threaten PIAFSKY that what little work was being performed would stop if PIAFSKY did not pay the additional funds.

51.     MB, acting through NEEMAN demanded that PIAFSKY pay the kitchen cabinet materialman/subcontractor directly for the cabinets and installation (even though such services were included in the initial contract).  PIAFSKY complied with MB's demand and paid the kitchen cabinet materialman/subcontractor directly, and the contract price was lowered to reflect the change.  A copy of Invoice/Work Order No. 96 dated Nov. 20 2023 reflecting the aforementioned change is annexed hereto as **Exhibit B**.

52.     In late December 2023, MB, acting through NEEMAN, demanded that PIAFSKY pay to MB additional funds, otherwise NEEMAN would stop all work on the Property.  PIAFSKY responded that MB had fallen well behind in schedule and that barely any work had been done.

53.     Finally, on or about January 2, 2024, PIAFSKY terminated MB from the project due to, *inter alia*, MB's failure to perform the demolition and construction in a workman like manner, its failure to perform the project expeditiously, and its repeated threats to cease all work unless additional monies were paid by PIAFSKY.

**THE TRUTH IS EXPOSED:**

54.     After terminating MB from the project, certain inconsistencies were discovered by PIAFSKY.  While NEEMAN always represented that he owned MB and it was "his" company, it came to light that MB was operated (and, upon information and belief, owned) by BOHADANA.

55.     PIAFSKY had never met, or heard of, BOHADANA at any time prior to MB's termination.

56.     Subsequently, PIAFSKY had multiple contractors visit the Property to obtain new estimates for the interior and exterior renovations.  Based upon the observations of the licensed contractors, it became clear that MB had not performed any significant portion of work required under the contract, and that for that small portion of work that was done, it was done improperly and/or not compliant with Florida's building code.  For example, and by no means exclusive:

    a.   MB had advised PIAFSKY that she needed to tear out all the existing dry wall, however, after MB's termination, other contractors informed PIAFSKY that a "skim coat" could have been applied to the existing dry wall which would have lowered the project price considerably;

    b.   MB had hired an engineer to draw plans for the project, however the engineer's plans failed to provide the proper dimensions for the interior of the Property, sometimes mislabeling the length/height of certain areas by over a foot;

c.   The cement in the kitchen floor was sealed without installing the electrical wiring first;

d.   The walls in the kitchen were closed up by MB without first blocking where the kitchen cabinets were to be mounted;

e.   MB closed up walls without placing the outlets in the correct spaces that had been previously marked by PIAFSKY;

f.   MB used flex piping for the hot water lines, which piping is known to be prone to degradation and leakage after seven years;

g.   MB used unlicensed electricians and unlicensed plumbers for work at the Property;

h.   The drain in the master bathroom's shower was installed in the wrong area preventing proper drainage;

i.   MB failed to properly grade the floor of the master bathroom's shower so that the water would be funneled to the drain;

j.   MB failed to install the electrical wiring through the proper channels provided for wiring and instead left the wires exposed against the sheetrock;

k.   MB failed to stagger the sheetrock properly contrary to Florida's Building code;

l.   MB installed gypsum sheetrock in the bathroom in areas on walls that were to be tiled – durock should have been used as sheetrock would be unable to support the tiles;

m.   MB failed to install proper framing for the interior doors.  The framing that was installed by MB was not tall enough to support the doors properly and would lead to shaky and unsteady doors;

n.  MB failed to install linear air vents as required by the contract and instead used square vents contrary to PIAFSKY's instructions;

o.  MB failed to perform the majority of the work required under the contract;

p.  MB moved the blower portion of the air conditioner unit from the first floor to the attic. In moving the air conditioner blower, MB intentionally damaged the trusses supporting the roof of the Property, thus weakening the roof.  Furthermore, moving the air conditioner blower to the attic would cause the air conditioner to malfunction in the summer due to the heat, and increase the likelihood of condensation leaks that would result in more damage;

57.  Additionally, during the demolition of the interior walls, MB threw the rubbish into Plaintiff's swimming pool causing damage to the pool's "Diamond Bright™" surface coating as well as to the pool's mechanical pumps.

58.  During construction, MB, working through NEEMAN, ordered certain new fixtures, and held them in a storage space that was leased to a third party.  Upon information and belief, the storage space was leased by a company owned by NEEMAN's wife's parents.  PIAFSKY was unaware that MB was using a third party's storage space for the storage of PIAFSKY's property.

59.  During construction, MB, working through NEEMAN, removed fixtures from the Property and stored them in in the same storage space which was leased by a third party.

60.  After MB was terminated from the Project, MB refused to return PIAFSKY's property that it was holding in storage.  Within a short time after MB's termination, it was discovered that the tenant for the storage space was being evicted, and thus PIAFSKY's property had to be removed immediately lest PIAFSKY be locked out of the storage space and deprived

10

of access to her property.  Due to MB and NEEMAN's actions, PIAFSKY was caused to incur a fee in order to retrieve her fixtures from the storage space and deliver the same to the Property.

61.    Upon PIAFSKY's inspection of the property that was held by MB in storage, it became evident that certain items were damaged and/or broken, and that the time to exchange such items had expired.  MB had either accepted broken items without examining the same, and allowed the warranty on the item to lapse, or the items were broken while being stored by MB.

62.    Notwithstanding the foregoing, prior to terminating MB, PIAFSKY paid to MB approximately $193,680.00, plus an additional $6,100.00 for the engineer used by MB and NEEMAN for a total of $199,780.00, representing 88% of total amount listed in the contract as amended.

63.    Additionally, PIAFSKY was forced to pay an additional deposit of $22,000.00 to the kitchen cabinet materialman/subcontractor for work and material that was originally to be provided and performed by MB.  PIAFSKY will have to pay an additional $25,000.00 in costs and fees to the kitchen cabinet materialman/subcontractor for the completed cabinets and installation of the same.

64.    Although PIAFSKY had paid to MB approximately eighty eight (88%) percent of the contract price, less than ten (10%) percent of the interior work was completed, the work that was done was defective, and none of the exterior work was performed.

65.    PIAFSKY was forced to hire a new contractor, not only to complete the renovations to the Property, but also to repair the defective and inferior work performed by MB.

66.    As the work at the Property is ongoing, it is anticipated that additional issues with the work that was performed by MB through NEEMAN and CFL will be revealed.

67.     All conditions precedent to the filing of this action have occurred, are deemed waived, excused or otherwise satisfied.

68.     Plaintiff has retained the undersigned counsel to represent her in the prosecution of this action, and is obligated to pay such attorneys their reasonable fees and expenses.

## COUNT I – Breach of Contract
### (Against Defendant MB)

69.     Plaintiff adopts, realleges, and incorporates herein each and every allegation contained in Paragraphs 1 through 68 above.

70.     Plaintiff entered into the contract with Defendant MB pursuant to which MB was to provide contracting services and complete certain improvements to Plaintiff's Property.

71.     Pursuant to the contract, Plaintiff was required to make timely payments on Defendants' invoices for work completed.

72.     Plaintiff fully performed its contract obligations.

73.     Pursuant to the contract, MB was to acquire all materials and permits required, and complete all the work in a timely fashion.

74.     MB failed to perform its contract obligations.

75.     MB did not obtain all required permits.

76.     MB did not obtain all required materials.

77.     MB did not perform the work in professional, workman like manner.

78.     MB did not complete the renovations that it was to perform under the contract.

79.     As a direct and proximate result of MB's breach of contract, Plaintiff has suffered substantial losses and damages.

80.     The damages suffered by Plaintiff include, but are not limited to, costs incurred to hire a new contractor, damages done to the Property, as well as expenses incurred as a result of delays in the renovations.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against MB for damages, in an amount to be determined at trial, but in any case, no less than $200,000.00 and award Plaintiff costs incurred in this action, attorneys' fees and costs, treble damages, pre-and post-judgment interest, and such other and further relief as the Court deems just and proper.

## COUNT II – Breach of Contract
(Against Defendants NEEMAN and CFL)

81.     Plaintiff adopts, realleges, and incorporates herein each and every allegation contained in Paragraphs 1 through 68 above.

82.     Pursuant to the contract, "All warranty, service calls and claims" regarding the project were to be performed by "Construction Fort Lauderdale".

83.     All the work that was done at the Property, was done either by NEEMAN directly, or under NEEMAN's supervision.

84.     Neither NEEMAN nor CFL are licensed by the State of Florida as a contractor and neither NEEMAN nor CFL are licensed by the State of Florida to insure the Project.

85.     NEEMAN and CFL, through NEEMAN, have made it clear that it will not return the monies paid by PIAFSKY, and it will not pay for PIAFSKY's new contractor.

86.     As a result, NEEMAN and CFL are unable and unwilling to warranty the defective work done on the Property and cannot warranty the work that was not performed.

87.     As a direct and proximate result of NEEMAN and CFL's breach of contract, Plaintiff has suffered substantial losses and damages.

88.     The damages suffered by Plaintiff include, but are not limited to, costs incurred to hire a new contractor, damages done to the Property, as well as expenses incurred as a result of delays in the renovations.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against NEEMAN and CFL, jointly and severally, for damages, in an amount to be determined at trial, but in any case, no less than $200,000.00 and award Plaintiff costs incurred in this action, attorneys' fees and costs, treble damages, pre-and post-judgment interest, and such other and further relief as the Court deems just and proper.

### COUNT III – Fraud
(Against Defendant NEEMAN)

89.     Plaintiff adopts, realleges, and incorporates herein each and every allegation contained in Paragraphs 1 through 68 above.

90.     As set out more fully above, NEEMAN made false and misleading statements regarding the progress of the contract work and expected completion dates in order to induce Plaintiff to continue making contract payments to MB.

91.     NEEMAN deliberately failed to disclose to Plaintiff the material facts necessary to make the misleading representations truthful.

92.     NEEMAN had knowledge of, or should have known of, these material facts and knowingly concealed this material information with the intent to induce Plaintiff to continue making contract payments to MB.

93.     As a direct and proximate result of NEEMAN's tortious conduct, Plaintiff has suffered substantial losses and damages.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against NEEMAN for damages, in an amount to be determined at trial, but in any case, no less than

$200,000.00 and award Plaintiff costs incurred in this action, attorneys' fees and costs, treble damages, pre-and post-judgment interest, and such other and further relief as the Court deems just and proper.

### COUNT IV – Fraud
(Against Defendants MB and BOHADANA)

94.     Plaintiff adopts, realleges, and incorporates herein each and every allegation contained in paragraphs 1 through 68 above.

95.     As set out more fully above, BOHADANA and MB knew and allowed NEEMAN and CFL to operate under MB's name and reputation without oversight by BOHADANA.

96.     BOHADANA and MB knew and allowed NEEMAN to submit bids for contracting work for MB's name and reputation without oversight by BOHADANA.

97.     BOHADANA and MB owed PIAFSKY a duty of care to oversee the work done by NEEMAN and CFL and to prevent the false and misleading statements made to PIAFSKY regarding NEEMAN's position with and ownership of MB, his licensure and/or lack thereof as a contractor, and his ability to perform the work required under the contract.

98.     BOHADANA and MB had knowledge of, or should have known of, these material facts and knowingly concealed this material information.

99.     As a direct and proximate result of BOHADANA and MB's tortious conduct, Plaintiff has suffered substantial losses and damages.

100.    WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants BOHADANA and MB for damages, in an amount to be determined at trial, but in any case, no less than $200,000.00 and award Plaintiff costs incurred in this action, attorneys' fees and costs, treble damages, pre-and post-judgment interest, and such other and further relief as the Court deems just and proper.

## COUNT V – Negligence
(Against All Defendants)

101.    Plaintiff adopts, realleges, and incorporates herein each and every allegation contained in Paragraphs 1 through 68 above.

102.    Each defendant in the instant action owed PIAFSKY a legal duty to comply with the Florida Building Code (and Florida Statutes incorporating the Florida Building Code) as each Defendant was involved in the facilitation of the Project from licensure to building permit to the actual servicing of the Project.

103.    Each Defendant breached the duty of care owed to PIAFSKY because the work that was done did not comply with the Florida Building Code.

104.    Plaintiff has been injured because each Defendants' breach of the duty of care owed to Plaintiff prevented Plaintiff's use and enjoyment of the Property and has created safety issues, and has left the Plaintiff with no alternative but to have an independent licensed contractor review and correct most, if not all, of the work that was done by Defendants.

105.    Plaintiff has also been damaged economically by each Defendants' breach of the duty of care owed to Plaintiff, including but not limited to, the expenditure of significant sums of money to correct the inferior and defective work performed by Defendants.

106.    Plaintiff's injuries have been proximately caused by the negligence of each Defendant, and the damages remain accruing.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against each Defendant for damages, in an amount to be determined at trial, but in any case, no less than $200,000.00 and award Plaintiff costs incurred in this action, attorneys' fees and costs, treble damages, pre-and post-judgment interest, and such other and further relief as the Court deems just and proper.

16

## COUNT VI – UNJUST ENRICHMENT
### (Against MB, NEEMAN and CFL)

107.     Plaintiff adopts, realleges, and incorporates herein each and every allegation contained in Paragraphs 1 through 68 above.

108.     Although PIAFSKY has paid approximately 80% of the contract price, MB did not approach anywhere near 80% of completion of the contractual obligations.  Moreover, the work that MB did perform was defective.

109.     Upon information and belief, the payments made to NEEMAN and CLF were shared with MB and NEEMAN.

110.     As a result, MB, NEEMAN and CFL have accepted payment from PIAFSKY in the amount of $199,780.00.

111.     MB, NEEMAN and CFL have been unjustly enriched in the amount of $199,780.00 while PIAFSKY was left with an unusable house, and was forced to hire a new contractor to correct the defective work that was performed by MB, NEEMAN and CFL, and to perform the work that was not performed by MB, NEEMAN and CFL.

112.     It would be inequitable for MB, NEEMAN and CFL to retain the benefit of the monies paid by PIAFSKY when PIAFSKY did not receive the work and services for which she paid.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants MB, NEEMAN and CFL for damages, in an amount to be determined at trial, but in any case, no less than $199,780.00 and award Plaintiff costs incurred in this action, attorneys' fees and costs, treble damages, pre-and post-judgment interest, and such other and further relief as the Court deems just and proper.

## COUNT VII – NEGLIGENCE PER SE
### (Against MB and BOHADANA)

113.   Plaintiff adopts, realleges, and incorporates herein each and every allegation contained in Paragraphs 1 through 68 above.

114.   Defendants MB and BOHADANA owed PIAFSKY, and the public at large, a duty not to participate in the unlicensed practice of construction services, to prevent the use of BOHADANA and MB's license by unlicensed parties to solicit contracts, to submit bids, and to prevent unlicensed construction work.

115.   MB and BOHADANA intentionally and knowingly allowed NEEMAN and CFL to operate under MB's name and to use MB and BOHADANA's licenses to perform unlicensed construction services.

116.   Additionally, MB and BOHADANA allowed NEEMAN and CFL to perform residential construction work under MB and BOHADANA's certification, without MB and/or BOHADANA having any active participation in the operations, management, control or oversight of the project.

117.   Had MB and BOHADANA prohibited NEEMAN and CFL from conducting business under MB's certification, NEEMAN and CFL would not have been able to conduct the negligent acts which damaged Plaintiff's property.

118.   As a result of the foregoing, Plaintiff has been damaged, as the work actually performed by MB on the Property, via NEEMAN and CFL, was defective, while the majority of the work was not performed at all.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants MB and BOHADANA for damages, in an amount to be determined at trial, but in any case, no less than $200,000.00 and award Plaintiff costs incurred in this action, attorneys' fees

and costs, treble damages, pre-and post-judgment interest, and such other and further relief as the Court deems just and proper.

## COUNT VIII – NEGLIGENCE PER SE
### (Against CFL and NEEMAN)

119.    Plaintiff adopts, realleges, and incorporates herein each and every allegation contained in Paragraphs 1 through 68 above.

120.    Defendants NEEMAN and CFL owed PIAFSKY, and the public at large, a duty not to participate in the unlicensed practice of construction services.

121.    NEEMAN and CFL intentionally and knowingly allowed operated under MB's name and license to perform construction services without proper management and supervision by a licensed person.

122.    As a result of the foregoing, Plaintiff has been damaged, as the overwhelming majority of work was not performed, and the work that was actually performed on the Property, by NEEMAN and CFL, was defective.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants NEEMAN and CFL for damages, in an amount to be determined at trial, but in any case, no less than $200,000.00 and award Plaintiff costs incurred in this action, attorneys' fees and costs, treble damages, pre-and post-judgment interest, and such other and further relief as the Court deems just and proper.

## COUNT IX - VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Against MB and BOHADANA)

123.    Plaintiff adopts, realleges, and incorporates herein each and every allegation contained in Paragraphs 1 through 68 above.

124.     Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits unfair and deceptive acts or practices in the conduct of any trade or commerce. §501.204(1) Fla. Stat.

125.     MB and BOHADANA have violated FDUTPA by knowingly allowing NEEMAN and CFL to enter into contracts on behalf of MB, and engage in construction work under MB's name and certification, but without supervision by MB or BOHADANA.

126.     As a result thereof, PIAFSKY has been damaged by MB and BOHADANA's unfair and deceptive acts and practices.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants MB and BOHADANA for damages, in an amount to be determined at trial but in any case no less than $200,000.00 and awarding Plaintiff costs incurred in this action, attorneys' fees and costs, treble damages, pre-and post-judgment interest, and such other and further relief as the Court deems just and proper.

### COUNT X - VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Against NEEMAN and CFL)

127.     Plaintiff adopts, realleges, and incorporates herein each and every allegation contained in Paragraphs 1 through 68 above.

128.     Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits unfair and deceptive acts or practices in the conduct of any trade or commerce. §501.204(1) Fla. Stat.

129.     NEEMAN violated FDUTPA by knowingly and intentionally representing that he owned MB and that he was licensed as a general contractor, and by engaging in construction work under MB's name and certification without MB or BOHADANA's supervision.

130.    CFL perpetuated this deceptive practice by doing business under the name "MB Home Improvements" and by offering services such as "warranty, services calls and claims" that it was not qualified to offer.

131.    As a result of the foregoing, PIAFSKY has been damaged by NEEMAN and CFL's unfair and deceptive acts and practices.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants NEEMAN and CFL for damages, in an amount to be determined at trial, but in any case, no less than $200,000.00 and award Plaintiff costs incurred in this action, attorneys' fees and costs, treble damages, pre-and post-judgment interest, and such other and further relief as the Court deems just and proper.

## COUNT XI - FRAUD IN THE INDUCEMENT
### (Against NEEMAN and CFL)

132.    Plaintiff adopts, realleges, and incorporates herein each and every allegation contained in Paragraphs 1 through 68 above.

133.    As set out more fully above, NEEMAN made false and misleading statements to PIAFSKY regarding his position with and ownership of MB, his licensure and/or lack thereof as a contractor, the certification of the subcontractors who would be involved in the Project, and his ability to perform the work required under the contract, in order to induce Plaintiff to enter into the contract.

134.    NEEMAN knew, or should have known, that he made these false statements to induce PIAFSKY to enter into the contract, and to make payments under the contract.

135.    As a result of the foregoing, PIAFSKY has been damaged by NEEMAN's fraudulent inducement and PIAFSKY must now hire new contractors to correct the defective

work that was done by MB via NEEMAN and CFL, and to perform the work that was not performed at all.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants MB and BOHADANA for damages, in an amount to be determined at trial but, in any case, no less than $200,000.00 and award Plaintiff costs incurred in this action, attorneys' fees and costs, treble damages, pre-and post-judgment interest, and such other and further relief as the Court deems just and proper.

### COUNT XII - STATUTORY DAMAGES
### (Against All Defendants)

136.   Plaintiff adopts, realleges, and incorporates herein each and every allegation contained in Paragraphs 1 through 68 above.

137.   MB and BOHADANA allowed unlicensed contractors, *to wit*, NEEMAN and CFL to submit bids, enter into contracts and engage in construction work on behalf of MB, without supervision by MB and BOHADANA.

138.   NEEMAN and CFL submitted bids, entered into contracts and engaged in construction work on behalf of MB, without supervision by MB and BOHADANA.

139.   The work performed by NEEMAN and CFL was defective.

140.   Pursuant to §768.0425 Fla. Stat. when bringing an action against a contractor for negligence, malfeasance and/or misfeasance, the injured party is entitled to treble damages if the contractor is not certified as a contractor.

141.   In the instant matter, although BOHADANA and MB were licensed by the State of Florida, the actual work was performed by NEEMAN and CFL, who are not licensed by the State of Florida.

142.    Because of these deficiencies, the Defendants may be held liable for treble damages in addition to costs and attorneys' fees.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants for treble damages, in an amount to be determined at trial, but in any case, no less than $200,000.00 and award Plaintiff costs incurred in this action, attorneys' fees and costs, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

Dated: December 12, 2024

Respectfully submitted,

BERENTHAL & ASSOCIATES, P.A.

By: _____
David W. Berenthal
Florida Bar No. 159220
E-mail: dwb@berenthalaw.com
255 Alhambra Circle, Suite 1150
Coral Gables, FL 33134
Telephone: (212) 302-9494